## APPEAL OF THE HOME TELEPHONE & TELEGRAPH CO.

Docket No. 3323.    Submitted October 13, 1925.    Decided February 3, 1926.

*Alfred L. Geiger, Esq.*, for the taxpayer.
*Percy S. Crewe, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and LOVE.

This is an appeal from the determination of a deficiency in income and profits taxes for 1919 and 1920 aggregating $1,404.59. The deficiency is said to be due to the inclusion in taxable net income of an amount of $11,081.99, Federal income taxes paid by the taxpayer for 1918, such amount being alleged to be covered by an obligation of the Postmaster General assumed during Federal control. The appeal was submitted upon the pleadings and exhibits.

### FINDINGS OF FACT.

The taxpayer is a telephone corporation of Indiana, whose properties were taken over by the Postmaster General, at midnight, July 31, 1918. The taxpayer thereupon made its offer of contract to cover the supervision, possession, control, and operation of its telephone system and the just compensation therefor, and this offer was accepted by the Postmaster General, by direction of the President, on October 25, 1918. This contract contained, among numerous other provisions, the following:

Section 5. * * * (b) The Owner shall, before they become delinquent, pay all taxes, license fees and charges, and the expense of suits in respect thereof, which can or may be lawfully imposed during the period of Federal control by Federal or other governmental authority upon any part of the property described in paragraph (a) of Section 1 hereof, and also such other taxes, license fees and charges as during the period of Federal control become the obligations of the Owner.

The Owner shall render bills to the Postmaster General for such taxes, license fees and charges as the same are paid, which bills shall be accompanied by receipts of the proper tax collecting officials, and shall be paid by the Postmaster General within five days after their rendition, except that said bills shall not include and the Postmaster General shall not pay to the Owner, the portion of such taxes, license fees and charges properly apportionable to property not taken under Federal control and to the revenue from said last mentioned property.

If any such tax, license fee or charge is for a period which began before July 31, 1918, or continues beyond the period of Federal control, such portion of such tax, license fee or charge as may be apportionable to the period of Federal control shall be paid by the Postmaster General and the remainder shall be paid by the Owner.

Whenever a period for which a tax, license fee or charge is imposed cannot be definitely determined, so much of such charge as is payable in any calendar year shall be treated as imposed for such year.

Section 7. (a) The Postmaster General shall pay to the Owner for each year and pro rata for each fractional part of a year during the period of Federal control, an amount equal to the sum of the following three items: item (1) One Hundred Thousand Dollars ($100,000.00) ; item (2) the annual charge for interest and dividends and other costs of securing necessary additional capital for such expenditures as may be made at the request of the Postmaster General; item (3) the annual charge for such interest and dividends as the Owner may be required to pay on new securities, obligations or share capital issued for the discharge, conversion or renewal of present obligations, and for additional interest and charges to secure extension of existing securities or obligations. * * *

The taxpayer allocated the 1918 Federal income tax as follows:

| | |
|---|---|
| Income tax charged to Postoffice Department | $4, 617. 50 |
| Income tax charged to accrued taxes | 4, 397. 84 |
| Income tax charged to surplus | 2, 085. 71 |
| Total | 11, 101. 05 |
| Less tax adjustment | 19. 06 |
| | 11, 081. 99 |

The Commissioner restored this amount to taxpayer's income for 1919.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

STERNHAGEN : From the foregoing facts, which are all those in the record in respect of the factors of taxable income, it is utterly impossible to determine the taxpayer's liability. Briefs have been filed upon the question whether the reimbursement by the Postmaster General of the company's income tax under section 5 of the contract was taxable income of the company, and whether that issue is controlled by the decision in *Appeal of New York, Ontario & Western Ry. Co.*, 1 B. T. A. 1172. But the facts are inadequate for the consideration of such questions. Did the company pay any taxes, and, if so, what were they, how were they computed, and how were they assessed? Did the Postmaster General pay the company, and, if so, when and in what amount? The equivocal fact that the taxpayer allocated certain amounts is too uncertain, and we dare not assume its significance.